UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNIVERSITY OF SOUTHERN CALIFORNIA on behalf of its KECK HOSPITAL OF USC and on behalf of its USC VERDUGO HILLS HOSPITAL,

Plaintiff,

v.

COVENTRY HEALTH CARE NATIONAL NETWORK, INC.; FIRST CONTINENTAL LIFE & ACCIDENT INSURANCE CO.' FIRST HEALTH GROUP CORP.; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:25-cv-03364-MEMF-PD

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE [DKT. NOS. 20, 27, 22-1, 23, 33-2]**

For the reasons discussed below, the Motion to Dismiss filed by Defendant First Continental Life & Accident Insurance Co., Dkt. No. 20, is GRANTED IN PART; the Motion to Dismiss filed by Defendant Administrative Concepts Inc., Dkt. No. 27, is GRANTED IN PART; the Motion to Dismiss filed by Defendants Coventry Health Care National Network Inc. and First Health Group Corp., Dkt. No. 22-1, is GRANTED IN PART; and the Request for Judicial Notice filed by

1

Defendants Coventry Health Care National Network Inc and First Health Group Corp., Dkt. Nos. 23, 33-2, is GRANTED IN PART.[1]

## BACKGROUND

### I. Factual Allegations[2]

#### A. The Parties

##### i. The Plaintiff

Plaintiff is the University of Southern California, a nonprofit public benefit corporation, who is bringing this suit on behalf of Keck Hospital of USC and USC Verdugo Hills Hospital. 1AC ¶ 2.

##### ii. The Defendants

Defendant Coventry Health Care National Network, Inc. ("Coventry Health") is a corporation. *Id.* ¶ 4. Defendant First Health Group Corporation ("First Health") is a corporate entity. *See id.* ¶¶ 6, 152. Defendants Coventry Health and First Health collectively are referred to at times as "Coventry Companies" or "Coventry Company." *Id.* ¶ 8. Defendant Administrative Concepts Inc. ( "ACI") is a corporation and "Registered Administrator." *Id.* ¶¶ 7, 152. Defendant First Continental Life & Accident Insurance Co. ( "FCL") is a licensed insurance company (also an "insurer") in various states. *See id.* ¶¶ 5, 152. Collectively, FCL, Coventry Health, First Health, and ACI are referred to as "Defendants." *Id.* ¶ 12.

Plaintiff alleges that "Defendants have entered into an administrative service agreement or other contracts with ACI . . . to act as agents for Defendants, and have provided ACI . . . actual or ostensible authority to act on Defendants' behalf." *Id.* ¶ 14. ACI is deemed to be able to communicate with policyholders and medical providers, create agreements with medical providers on medical services, verify member policy information and eligibility, interpret plan terms, authorize

---

[1] On November 12, 2025, the Court found these matters appropriate for resolution without oral argument. Dkt. No. 41; see Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] The following factual background is derived from the allegations in Plaintiffs' First Amended Complaint, Dkt. No. 15 ("1AC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

services, determine coverage, process the Hospitals' claims, approval or deny claims/appeals, and determine and issue payment of the claims. *See id.*

### B. The Allegations

#### i. Cease-and-Desist Order

On February 2, 2022, the California Department of Insurance issued a cease-and-desist order demanding that FCL stop operating an insurance plan in California, finding that FCL unlawfully acted as an insurance company in California without the required certification. *See* 1AC ¶ 22. The cease-and-desist order found that "FCL engaged in numerous unlawful activities, including, but not limited to, misrepresenting fixed-benefit indemnity insurance as 'health insurance' and issuing such policies to Californians who did not have comprehensive health insurance." *Id.* ¶ 23.

First Health was instructed to end its "business practices aiding and abetting [FCL's] unlawful transaction of insurance in California," which was in violation of California Insurance Code Section 703. *See id.* ¶¶ 27-28. FCL and its co-conspirators, including ACI and First Health, were ordered to cease and desist from engaging in all the unlawful activities set forth in the cease-and-desist order. *Id.* ¶¶ 24, 81.

#### ii. Verdugo Hills Hospital Claim

In early February 2023, the patient from whose treatment the claims arise ("Patient") was admitted to the Emergency Department at Verdugo Hills Hospital to receive emergency medical services. *See id.* ¶¶ 16, 79. Patient identified to Verdugo Hills Hospital that he was a California resident and presented an insurance card that claimed the plan offered "[l]imited medical benefits underwritten by: [FCL]." *Id.* ¶ 17. The card also identified First Health as the applicable network and directed providers to submit claims to ACI. *Id.*

Once Patient was admitted, a Verdugo Hills Hospital employee, Joyce Robert, called ACI and verified Patient's eligibility under the plan. *Id.* ¶ 18. The following day, Robert phoned ACI again and verified Patient's insurance type as "PPO," and verified Patient's insurance benefits and coverage as "100% with zero [copay] and deductible." *Id.* Robert also instructed that the hospital fax clinical information to ACI and represented no precertification was required. *Id.* Verdugo Hills Hospital requested authorization of the services the Hospital would be providing Patient and, in

doing so, specifically informed the Defendants what type of clinical care and illness Patient was receiving care for from the Hospital. *See id.* ¶¶ 34, 38. During this authorization, the information Defendants provided to Verdugo Hills Hospital did not disclose that Patient's insurance plan, through FCL, did not cover charges for the care Patient was and would be receiving. *See id.* ¶ 35. FCL, ACI, and its other co-conspirators (collectively, the "Payors") also never told Verdugo Hills Hospital that February 14, 2023, was the last day Patient had insurance coverage or that there were benefits limitations. *See id.* ¶¶ 21, 51.

At Verdugo Hills Hospital, Patient was diagnosed with various respiratory diseases. *See id.* ¶ 19. Five days after being admitted to Verdugo Hills Hospital, Patient's physicians determined that Patient needed to be transferred to Keck Hospital to receive a higher level of medical care. *See id.* ¶ 20. Verdugo Hills Hospital "provided acute care hospital services to the Patient with total charges of $190,521.35, with the expected reimbursement of $34,651.66 based on the [Verdugo Hills Hospital] Agreement rate." *Id.* ¶ 42. Verdugo Hills Hospital sent a claim for reimbursement to "FCL and/or its Agents" and was denied months later because the services Verdugo Hills Hospital provided were not covered by Patient's FCL insurance plan due to the "exclusion of the alcohol related diagnoses." *See id.* ¶¶ 32, 43. Verdugo Hills Hospital "dealt directly with FCL [and/or] ACI . . . in obtaining agreements to pay for services, seeking authorization for the services, obtaining eligibility and coverage information, submitting claims for reimbursement, communicating about the claims, appealing the denial or underpayment of the claim, submitting additional information concerning the claim, and receiving explanation of benefit." *Id.* ¶ 15. Plaintiffs allege that Verdugo Hills Hospital had a contract with Defendants Coventry Health and First Health. *See id.* ¶ 172. Defendants have not paid anything to Verdugo Hills Hospital for such services. *Id.* ¶ 45.

iii.  Keck Hospital Claim

When Verdugo Hills Hospital determined that Patient required a higher level of care to sustain Patient's life, Verdugo Hills Hospital contacted the Keck Hospital to request a transfer. *Id.* ¶ 46. In February and March 2023, Keck called "FCL and/or its agents" to clear Patient before admissions, who informed Keck that Patient had active coverage and benefits and no authorization was required. *See id.* ¶¶ 47, 48, 50. Keck registered Patient under "First Health" coverage and

expected reimbursement from the plan at the "Coventry Company Network rates under the Keck and Verdugo Agreement with Coventry Companies." *Id.* ¶ 48. During and after the treatment from March to April 2023, Keck also sent ACI Patient's clinical notes and engaged in discussions around sending Patient's toxicology report, admission summary, and discharge summary. *See id.* ¶¶ 53-54. And in May 2023, ACI told Keck that Patient had coverage in "the earlier dates of service and coverage was still active." *Id.* ¶ 55.

Patient was admitted to Keck for emergency treatment and treated from February to March 2023. *Id.* ¶ 52. Keck Hospital "provided acute rehabilitation hospital services to the Patient with total charges of $785,657.29, with the expected reimbursement of $510,677.24 from the plan at the Coventry Company rates under the Keck and Verdugo Hills Agreement." *Id.* ¶ 70. Keck Hospital sent a claim for reimbursement to "FCL and/or its Agents" and was denied months later because "the Patient's services were rendered after the Patient insurance had terminated on February 14, 2023." *See id.* ¶¶ 59, 63. The Payors never told Keck Hospital that February 14, 2023, was the last day Patient had insurance coverage or that there were benefits limitations. *See id.* ¶¶ 21, 51. Like Verdugo Hills Hospital, Keck "dealt directly with FCL, [and/or] ACI . . ." throughout this whole process. *See id.* ¶ 15. Keck Hospital had a contract with "Coventry Company." *See id.* ¶¶ 157-61. Defendants have not paid anything to Keck for such services. *Id.* ¶ 71.

## II. Procedural History

On January 27, 2025, USC filed a complaint for damages and injunctive relief against Defendants in Los Angeles County Superior Court. Dkt. No. 1-1, Ex. A ("Complaint"). On April 16, 2025, Defendants filed a Notice of Removal ("NOR"). Dkt. No. 1. On June 16, 2025, USC filed the operative first amended complaint. Dkt. No. 15 ("1AC"). USC alleges eight causes of action: (1) negligent misrepresentation; (2) deceit; (3) breach of implied-in-fact contract; (4) quantum meruit; (5) promissory estoppel; (6) unfair business practices, Cal. Bus. & Prof. Code Section 17200 *et seq*; (7) breach of written contract; and (8) breach of written contract (against only Defendants Coventry Health and First Health). *See generally* 1AC.

On July 7, 2025, Defendant FCL filed a Motion to Dismiss. Dkt. No. 20 ("FCL Motion"). On August 14, 2025, USC filed an Opposition to the FCL Motion. Dkt. No. 29 ("FCL Opposition"). On

August 21, 2025, FCL filed a Reply to the FCL Opposition. Dkt. No. 32 ("FCL Reply"). On July 7, 2025, Defendants Coventry Health and First Health filed a Motion to Dismiss. Dkt. No. 22-1 ("Coventry Motion"). On August 14, 2025, USC filed an Opposition to the Coventry Motion. Dkt. No. 28 ("Coventry Opposition"). On August 21, 2025, Defendants Coventry Health and First Health filed a Reply to the Coventry Opposition. Dkt. No. 33 ("Coventry Reply"). On August 14, 2025, Defendant ACI filed a Motion to Dismiss. Dkt. No. 27 ("ACI Motion"). On August 28, 2025, USC filed an Opposition to the ACI Motion. Dkt. No. 34 ("ACI Opposition"). On September 4, 2025, Defendant ACI filed a Reply to the ACI Opposition. Dkt. No. 35 ("ACI Reply"). Lastly, on July 7, 2025, Defendants Coventry Health and First Health filed a Request for Judicial Notice. Dkt. No. 23 ("RJN"). On August 14, 2025, USC filed an Opposition to the RJN. Dkt. No. 30 ("RJN Opposition"). And on August 21, 2025, Defendants Coventry Health and First Health filed a Reply to the RJN Opposition, and a Second Request for Judicial Notice. Dkt Nos. 33-1 ("RJN Reply"), 33-2 ("Second RJN").

### DEFENDANTS FCL's AND ACI's MOTIONS TO DISMISS (DKT. NOS. 20, 27)

#### I.    Applicable Law

Defendants FCL and ACI bring their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918

6

(9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II.     Discussion

Defendants FCL and ACI move to dismiss USC's claims for (1) negligent misrepresentation; (2) deceit; (3) breach of implied-in-fact contract; (4) quantum meruit; (5) promissory estoppel; (6) unfair business practices; and (7) breach of written contract. *See generally* FCL Motion; ACI Motion. For the reasons stated below, the Court GRANTS IN PART the Motions.

### A. USC has not sufficiently alleged a claim for negligent misrepresentation against FCL or ACI (Claim One).

FCL contends that the 1AC "lacks any [specific] allegation of an oral or written communication or representation by FCL." FCL Motion at 7. USC contends that the 1AC alleged FCL, through its agents, "misrepresented to the Hospitals regarding the Patient's actual insurance coverage and benefits, including that no preauthorization was required and that the services would be covered 100%." FCL Opposition at 6.

The elements of negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *B.L.M. v. Sabo & Deitsch*, 64 Cal. Rptr. 2d 335, 342 (Cal. Ct. App. 1997) (internal quotation marks omitted).

Federal Rule of Civil Procedure 9(b) requires that claims sounding in fraud—such as negligent misrepresentation—must be pleaded with particularity.[3] To comply with Rule 9(b),

---

[3] The parties focus on the pleading standards applicable in California courts. *See Foster v. Sexton*, 276 Cal. Rptr. 3d 172, 197 (Cal. Ct. App. 2021). ("[N]egligent misrepresentation, must be pleaded with particularity—

allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Specifically, the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner*, 6 F.3d at 672 ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

Here, as to FCL, the 1AC does not allege negligent misrepresentation with the specificity that is required. The only specific allegation USC points to in its opposition is the allegation that "[t]he Patient presented an insurance card to [USC] identifying ACI as the claim administrator with medical benefits underwritten by FCL. FCL Opposition at 7 (citing 1AC ¶ 17). In its Opposition, USC also does not point to any other allegations which satisfy the requirement to specifically plead the who, what, when, where, and how. *See id.* at 6-7. Next, as to ACI, USC does not allege that ACI employee Robert, who "verified the Patient's insurance benefits and coverage as 100% were zero cop[a]y and deductible," and "instructed that the hospital fax clinicals to ACI" had the authority to speak on behalf of ACI, to satisfy the "who" requirements under Rule 9(b) to give ACI sufficient notice. *See* 1AC ¶ 18; *see also* ACI Motion at 8.

Accordingly, FCL's and ACI's Motions to Dismiss the negligent misrepresentation claim are GRANTED.

---

that is, the pleading must set forth how, when, where, to whom, and by what means the representations were made."); *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 295 (Cal. Ct. App. 2013) ("[I]n the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made."). It is not clear that those are applicable here. This is of no moment given that USC has failed to plead with particularity under either standard.

**B. USC has not sufficiently stated a claim for deceit against FCL or ACI (Claim Two).**

FCL and ACI allege that USC cannot "allege facts showing any communication at all between Plaintiff and FCL [or ACI] specifically," and so there can be no suppression of any fact for a concealment deceit claim. *See* FCL Motion at 8; ACI Motion at 9. USC alleges that: (1) Patient's insurance coverage had terminated and (2) the fact that the FCL plan did not cover the services rendered to Patient misled USC into believing that the services were fully covered by Patient's FCL plan and would be reimbursed. *See* FCL Opposition at 7. USC relied on this concealment which detrimentally harmed them. *See id.* USC also alleges that ACI's employee made direct representations to the Hospitals regarding Patient's coverage and the need for precertification, which also misled USC into believing the services were fully covered, and USC relied on such concealment to its detriment. *See* ACI Opposition at 8.

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 332 (Cal. Ct. App. 2008); *see also* Cal. Civ. Code §§ 1709-1710 "Concealment is a species of fraud, and '[f]raud must be pleaded with specificity.'" *Blickman Turkus, LP*, 76 Cal. Rptr. 3d at 340 (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 235 (Cal. Ct. App. 2007)); *see also Beckwith v. Dahl*, 141 Cal. Rptr. 3d 142, 159 (Cal. Ct. App. 2012).

Here, as with the negligent misrepresentation claim, USC does not allege the concealment by FCL and ACI with the specificity that is required under Rule 9(b). And in its Opposition, USC does not point the Court to any specific allegations that would meet the requirements of Rule 9 (or California law). *See* FCL Opposition at 7; ACI Opposition at 8.

Accordingly, FCL's and ACI's Motions to Dismiss the deceit claim are GRANTED.

9

**C. USC has not sufficiently alleged a claim for Breach of Written Contract against FCL or ACI (Claim Seven).**

To prevail on a breach of contract claim under California law, a plaintiff must establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). A valid contract exists if the parties to the contract are capable of contracting, both parties consent to the contract's terms, a lawful object is present, and sufficient consideration exists. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).

FCL and ACI contend that no contract was entered into between USC and FCL or USC and ACI, and the terms were not alleged. *See* FCL Motion at 13; ACI Motion at 13. USC alleges that it had contractual agreements with Coventry for each hospital, and FCL gained access to these agreements. *See* FCL Opposition at 14. USC next alleges that the "well-pled agency allegations against ACI for contracting with the Defendants to perform various duties in administering health benefits for Defendants' insureds" bound ACI to the contractual agreements with Coventry. *See* ACI Opposition at 15.

Here, USC has failed to allege a written contract between FCL and USC or ACI and USC. USC only points to the fact that FCL and ACI purportedly "accessed the Coventry Company contract rates," FCL Opposition at 14; ACI Opposition at 15, which—without more—is insufficient to allege that FCL or ACI were a party to USC's agreements between USC and Coventry Health and First Health.

Accordingly, FCL's and ACI's Motions to Dismiss the breach of written contract claim are GRANTED.

**D. USC has not sufficiently alleged a claim for Breach of Implied-In-Fact Contract against FCL or ACI (Claim Three).**

FCL and ACI contend that there was no agreement on terms between FLC and USC or ACI and USC, no direct communication between FCL and USC or ACI and USC, and no property of USC to have inured to FCL or ACI for its benefit to create any obligation for an implied contract. *See* FCL Motion at 9; ACI Motion at 9. USC contends that "FCL and/or its agent(s), verified the

Patient's eligibility and benefits, requested clinical information, and assured the Plaintiff that no preauthorization was required. These actions implied a request for services and an agreement to pay for those services." FCL Opposition at 8; *see also* ACI Opposition at 9 (alleging the same against ACI). The Court need not address if there was any benefit, because the Court finds the 1AC did not allege a meeting of the minds to establish mutual assent to the terms of any implied contract.

The elements of a breach of contract claim are: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 311 Cal. Rptr. 3d 564, 580 (Cal. Ct. App. 2023) (internal citations omitted). A claim for breach of implied contract has the same elements as a claim for breach of contract, "except that the promise is not expressed in words but is implied from the promisor's conduct." *Id.* To show that a contract exists, a plaintiff must allege mutual assent and consideration. *Chandler v. Roach*, 319 P.2d 776 (Cal. Ct. App. 1957). "Contract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense." *Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 698 (Cal. Ct. App. 2006) (citations omitted).

Here, USC does not sufficiently allege there was mutual assent between FCL and USC or ACI and USC to form an implied-in-fact contract. USC alleges that "[p]rior to providing acute care hospital services to the Patient, the Hospitals notified the Defendants of the Patient's inpatient admission and verified the Patient's eligibility, coverage, and benefits with the Defendants and or their agents." 1AC ¶ 106. "ACI's employee Joyce Robert . . . verified the Patient's insurance benefits and coverage as 100% with zero [copay] and deductible. Ms. Robert further instructed that the hospital fax clinicals to ACI and represented no precertification was required." *Id.* ¶ 18. USC then alleges that "Defendants requested from the Hospitals clinical information regarding the Patient's medical condition," and in engaging in such communications and taking such actions [including the verifications and authorizations], Defendants impliedly communicated and USC "reasonably understood" those communications to mean that the Hospital would provide services with an implied agreement by Defendants to pay for such services. *See id.* ¶¶ 108-09, 114, 118; *see also id.* ¶ 34, 53-55 (noting what information Keck received from ACI during the verifications,

authorizations, and admissions process). USC then ties this implied breach to FCI and ACI by alleging that in engaging in these actions, "each of the Defendants was the agent and/or employee of each of the remaining Defendants, including specifically but not limited to FCL and Coventry Company" and acting within the scope of its agency relationship with consent from FCL and Coventry. *See id.* ¶ 110.

First, USC's "request for authorization . . . is insufficient for the creation of" mutual assent. *See Allied Anesthesia Med. Grp., Inc. v. Inland Empire Health Plan*, 295 Cal. Rptr. 3d 801, 815 (Cal. Ct. App. 2022); *Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 218 Cal. Rptr. 3d 562, 575 (Cal. Ct. App. 2017). Second, when viewing the factual allegations as true, it is unclear how much FCL or ACI agreed to pay for the services, even if USC discussed clinical information in addition to the request for authorization. USC alleges that ACI claimed coverage was "100% with zero [copay]," *id.* ¶ 18, however that does not mean there was an agreement as to how much FCL or ACI would pay for the services. And USC alleges that it "expected reimbursement at the Coventry Company contract rate," *id.* ¶ 119, but does not allege what that rate was. There are also no allegations in the 1AC of any prior history of payment or that FCL or ACI would pay the "usual and customary value of the services." *See* Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B). "[T]he amount that [FCL or ACI] would pay [USC] for [its] services is a material term of any contract, such that, absent an allegation that the parties agreed on that amount, no implied-in-fact contract [can be] formed." *Allied Anesthesia Med. Grp., Inc.*, 295 Cal. Rptr. 3d at 816; *see also Pac. Bay Recovery, Inc.*, 218 Cal. Rptr. 3d at 575 (holding that there was no breach of an implied-in-fact contract because it did not appear "the parties reached any sort of agreement as to the rate [the insurance company] would pay"). Therefore, because USC did not identify any amount to pay for the services, USC has not sufficiently pleaded mutual assent and cannot state a claim for breach of implied contract against FCL or ACI.

Accordingly, FCL's and ACI's Motions to Dismiss the breach of implied-in-fact contract claim are GRANTED.[4]

### E. USC has not sufficiently alleged a claim for quantum meruit against FCL or ACI (Claim Four).

FCL and ACI contend that there are no allegations that FCL or ACI requested anything of USC and that the services were for FCL's or ACI's benefit. *See* FCL Motion at 9; ACI Motion at 10. USC contends that USC was legally required to provide services under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, regardless of a request, and that the services were offered for FCL's and ACI's benefit due to the purposes of a health insurance plan and ACI's agency relationship. *See* FCL Opposition at 9; ACI Opposition at 10.

"[T]o recover under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for such services from the defendant and that the services rendered were intended to and did benefit the defendant." *Day v. Alta Bates Med. Ctr.*, 119 Cal. Rptr. 2d 606, 609 (Cal. Ct. App. 2002).

Here, USC has not sufficiently alleged a quantum meruit claim against FCL or ACI. In its Opposition, USC does not point to any specific allegations showing that USC was acting pursuant to an express or implied request. Furthermore, while it may be true that USC was required to provide emergency care to Patient under 42 U.S.C. § 1395dd, regardless of any express or implied request, USC fails to point to any specific allegations in its 1AC explaining what benefit FCL or ACI received from the services provided by the Hospitals and how they received them. *See* FCL Opposition at 9; ACI Opposition at 10. Therefore, the Court finds that USC has not adequately stated a claim for quantum meruit.

---

[4] USC contends that *Hoag Mem'l Hosp. v. Managed Care Adm'rs*, 820 F. Supp. 1232, 1236 (C.D. Cal. 1993) supports the proposition that "medical providers may bring claims directly against insurers or payors where the claims arise from the verification of benefits and representations made by the payor or its agents," *see* ACI Opposition at 9, however *Hoag* was not referring to a breach of implied-in-fact contract claim. Thus, the binding authority discussed above for a breach of implied-in-fact contract claim, *see Allied Anesthesia Med. Grp., Inc. v. Inland Empire Health Plan,* 295 Cal. Rptr. 3d 801, 815 (Cal. Ct. App. 2022); *Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.,* 218 Cal. Rptr. 3d 562, 575 (Cal. Ct. App. 2017), controls here.

Accordingly, FCL's and ACI's Motions to Dismiss the quantum meruit claim are GRANTED.

### F. USC has sufficiently alleged a claim for Promissory Estoppel against FCL or ACI (Fifth Claim).

FCL and ACI contend that USC has not alleged any promise by FCL to USC or by ACI to USC, so there was no reliance on any promise. *See* FCL Motion at 10; ACI Motion at 10. USC alleges that FCL and ACI promised to cover Patient's services at "100% with zero [copay] and deductible" and that no preauthorization was required, which USC relied on in expectation of full reimbursement. *See* FCL Opposition at 10; ACI Opposition at 11. USC also contends that ACI's "well-pleaded" agency relationship among the Defendants establish that ACI made a promise and reasonably induced USC in reliance on full reimbursement. *See* ACI Opposition at 11.

A party seeking to assert promissory estoppel must establish: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc.*, 205 Cal. Rptr. 3d 21, 26 (Cal. Ct. App. 2016) (internal quotation marks omitted) (quoting *U.S. Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Cal. Ct. App. 2005)). Courts have read a "causation" requirement into this standard—in other words, a plaintiff claiming promissory estoppel must prove that a defendant's unfulfilled promise caused the plaintiff's damages. *U.S. Ecology*, 28 Cal. Rptr. 3d at 904-07. The test for causation with respect to a promissory estoppel claim is whether the breach was a substantial factor in causing the damages. *Id.* at 909-10. To be enforceable under the promissory estoppel doctrine, a promise need only be "definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Aceves v. U.S. Bank, N.A.*, 120 Cal. Rptr. 3d 507, 514 (Cal. Ct. App. 2011).

Here, USC has sufficiently alleged the requisite elements. USC alleges that "[p]rior to the Hospitals' providing hospital services to the Patient, the Defendants informed Hospitals that the Patient had active coverage and no preauthorization was required for the services the Hospitals would provide the Patient," and "Defendants knew and/or should have known that Hospitals would

be reasonably induced to rely on their representations by providing hospital services to the Patient," in which the Hospitals did rely on and suffer damages. *See* 1AC ¶¶ 129-33. These allegations "sufficiently define" the scope of duties and limits of performance on FCL or ACI and therefore constitute an enforceable promise. *Aceves*, 120 Cal. Rptr. 3d at 514. For example, the allegations established that the services would be covered at 100%. *See* FCL Opposition at 8. Similarly, the allegations appear to sufficiently establish the agency relationship between ACI and FCL which would make it plausible that ACI promised to pay for full reimbursement to USC. *See* 1AC ¶ 14. Thus, the Court finds that USC has adequately stated a claim for promissory estoppel.

Accordingly, FCL's and ACI's Motions to Dismiss the promissory estoppel claim are DENIED.

### G.  USC has not sufficiently alleged a UCL claim against FCL or ACI (Claim Six).

California's Unfair Competition Law ("UCL") provides a cause of action for business practices that are unlawful,  unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. Each prong "is a separate and distinct basis for liability." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

To have standing under the UCL, a plaintiff must establish that they (1) suffered an injury in fact; and (2) lost money or property as a result of the unfair competition. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). The California Supreme Court has interpreted the standing requirement to include a causation element, as the plaintiff must "show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

USC alleges a UCL claim against FCL and ACI for (1) unlawful, (2) unfair, and (3) fraudulent activity.

#### i.    USC cannot allege a UCL unlawful prong claim against FCL or ACI.

The UCL's unlawful prong "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under [S]ection 17200." *Farmers Ins. Exch. v. Superior Ct.*, 826 P.2d 730, 734 (Cal. 1992). And because part of USC's unlawful claim alleges negligent

misrepresentation or deceit, it is subject to the heightened pleading standard as discussed above under Rule 9, if not under California law. *See Foster v. Sexton*, 276 Cal. Rptr. 3d 172, 197 (Cal. Ct. App. 2021); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 340 (Cal. Ct. App. 2008).

FCL and ACI contends that USC does not allege what provision of Cal. Code Regs. tit. 28, § 1300.71 applies to its unlawful claim for a violation of the Knox-Keene Act, and the majority of allegations in the 1AC, ¶ 141(a)-(o), are alleged against "Defendants" generally but do not refer to FCL. *See* FCL Motion at 11; ACI Motion at 11-12. USC contends that it does not have to allege "a particular statutory provision with tethering specificity" at this stage, and does cite violations of statutory and regulatory duties, like § 1300.71, § 1371.4(b), unlawful misrepresentation, and false promises. *See* FCL Opposition at 11-12; *see also* ACI Opposition at 11-12 (alleging the same). The Court finds that USC has "fail[ed] to plead facts to support its allegations that [FCL or ACI] has violated each of these [laws]." *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 186 (Cal. Ct. App. 2007).

First, USC alleges that Defendants "[f]ail[ed] to timely and fully reimburse the claim, including accrued interest, for the Patient in violation of 28 Cal. Code Reg. § 1300.71," and "[f]ail[ed] to issue payment to Hospitals for emergency medical services pursuant to Health and Safety Code [S]ection 1371.4(b)." *See* 1AC ¶ 141(a), (b); *see also* 1AC ¶ 141(e) (noting failure to reimburse claims by citing arbitrary standards). However, USC does not allege any facts to show a "reasonable inference," *see* FCL Opposition at 12, that FCL specifically engaged in this unlawful conduct. USC's only factual allegations to show that FCL specifically failed to reimburse and issue payment under § 1300.71 and § 1371.4(b) are conclusory. *See* 1AC ¶¶ 21, 32, 43, 45, 57, 59, 63, 71.

Furthermore, as to ACI, USC contends that even though ACI is not a health care service plan, it should be liable under the Knox-Keene Act. *See* ACI Opposition at 12. However, the Knox-Keene Act applies only to health care plans and its plan's capitated providers. *See* Cal. Code Regs. tit. 28, § 1300.71(a)(12), (e), and ACI is neither a health care plan nor a plan's capitated provider. ACI is a registered administrator. *See* 1AC ¶ 152. Also, Cal. Health & Safety Code § 1371.4(b) only applies to health care services plans or its contracting medical providers. *See* § 1371.4(b). Therefore,

because ACI is not a health care service provider, capitated provider, or medical provider, USC cannot state an unlawful claim as to ACI for violations of Sections 1300.71 and 1371.4(b).

Second, the allegations of the unlawful activity in the 1AC applying to FCL and ACI (USC does not differentiate) in ¶ 141(c), (d), (f), (j), (k), (l) are claims rooted in negligent misrepresentation, fraud, or deceit that do not meet the heightened pleading standard. *See Foster*, 276 Cal. Rptr. at 197; *Blickman Turkus*, 76 Cal. Rptr. at 340; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (noting that to the extent plaintiff alleges fraud under the UCL, such allegations must satisfy Rule 9(b)'s heightened pleading requirement). USC's conclusory agency allegation, *see* ACI Opposition at 12, does not save the unlawful UCL claims rooted in misrepresentation or deceit.[5]

Furthermore, while the allegations of the unlawful activity in the 1AC in ¶ 141(g), (h), (i), (o) regarding FCL's license, certification and issuing under California law, and the "fixed-benefit indemnity insurance" do sufficiently state violations of the law, they do not show that the economic injury was actually caused by these violations by either FCL or ACI. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). USC only alleges that it "has suffered injury-in-fact and lost money and/or property as the result of Defendants' refusal to pay for medical services the Hospitals provided to the Patient, a member of FCL's health plan," and that "[a]s a direct and proximate result of Defendants' wrongful acts, the Hospitals have suffered and will continue to suffer substantial pecuniary losses and irreparable injury-in-fact." *See* 1AC ¶¶ 144-45. This does not show the causation required for a UCL claim.

Also, "liability under the UCL may be imposed against those who aid and abet the violation." *People ex rel. Harris v. Sarpas*, 172 Cal. Rptr. 3d 25, 48 (Cal. Ct. App. 2014). Liability may be imposed if the defendant "knows the other's conduct constitutes a breach . . . and gives substantial

---

[5] USC argues that for the ¶ 141(l) unlawful claim against ACI, ACI is still liable for knowingly misrepresenting coverage to the Hospitals, because "[d]uring the insurance verification process, insurers or their agents have a duty to accurately advise providers regarding patients' coverage. As a party identified in the C&D Order, ACI cannot claim ignorance of FCL's unlawful practices or the scope of the coverage limitations." *See* ACI Opposition at 12-13. However, ACI was not an insurer, and as discussed above, there are only conclusory allegations establishing ACI's agency relationship. Thus, under the heightened pleading requirements for this misrepresentation claim, USC cannot successfully state an unlawful claim.

assistance or encouragement to the other to so act." *Id.* (quoting *Schulz v. Neovi Data Corp.*, 60 Cal. Rptr. 3d 810, 816 (Cal. Ct. App. 2007)). USC alleges broadly that ACI can be liable for aiding and abetting these violations, *see* ACI Opposition at 12-13, but USC does not allege how ACI knew the other Defendants' conduct constituted a breach of the law and gave substantial assistance or encouragement, *see* 1AC ¶¶ 81, 95, 141(l) n.1.

Accordingly, because USC has not properly alleged that FCL or ACI have engaged in any unlawful act that caused USC's injuries, the Court must GRANT the Motions on this ground.

ii. USC has failed to allege a UCL unfairness prong claim against FCL and ACI.

Under the UCL's unfairness prong, courts consider three different tests "either: (1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,'; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,'; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal citations omitted).

FCL and ACI contends that there is no public policy implicated because USC could have recovered the costs directly from Patient, and even if it could not have, USC had full knowledge of Patient's "limited benefits plan." *See* FCL Motion at 13; ACI Motion at 13. USC contends that its claim is not just about the "limited benefits plan," but rather is about FCL leveraging Coventry Health's favorable network rates while "avoiding full payment obligations and evading regulations," which favors the public policy of "good-faith participation by healthcare payors" under the statutory and regulatory obligations. *See* FCL Opposition at 12. And as to ACI, USC contends its claim is not just about the "need for any preauthorization," but rather is about the misrepresentations that induced the Hospitals to provide treatment, and claiming that Patient could pursue payment is contrary to public policy. *See* ACI Opposition at 13-14.

Here, the Court finds that USC has not adequately pleaded any public policy allegation for a UCL claim under the unfairness prong. *See* FCL Reply at 7-8. USC does not point to any allegations in its 1AC that spell out either of its public policy allegations. Rather the "complaint left the district

court to guess what conduct Plaintiffs alleged satisfied the 'unfair' prong of the UCL. [USC] allege[s] no facts that would support [its] position." *Doe*, 982 F.3d at 1215. Therefore, this "claim is not adequately pled to give proper notice of [USC's] claim and the grounds on which it lies." *Id.* USC does not also allege any arguments as to the other tests of the unfairness prong. Accordingly, USC has failed to state a UCL claim under the unfairness prong against FCL or ACI, so the Court must GRANT the Motions on this ground.[6]

### iii.    USC cannot allege a UCL fraudulent prong claim against FCL or ACI.

The UCL's fraudulent prong is governed "'by the reasonable consumer test': a plaintiff may demonstrate a violation by 'show[ing] that [reasonable] members of the public are likely to be deceived.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). This deception need not be intended. *Id.*

FCL and ACI contends that there "is no such allegation of whether the public may be deceived." *See* FCL Motion at 12; ACI Motion at 12. As to FCL, USC does not address this argument and just contends that it has "suffered an economic injury due to deceptive or misleading conduct." *See* FCL Opposition at 13. As to ACI, USC contends that it has sufficiently alleged "that the public, including medical providers, like the Hospitals, were likely to be deceived by the conduct at issue." *See* ACI Opposition at 14.

Here, the Court finds that USC does not allege any facts as to how FCL's or ACI's actions are likely to reasonably deceive or have deceived the public. USC only alleges that "Defendants intended to deceive the Hospitals by concealing these facts," not deceive the public. *See* 1AC ¶ 100; *see also* ACI Opposition at 14 (citing to no facts in the 1AC to support its claim). And as discussed above, USC has not adequately stated claims for negligent misrepresentation and deceit against FCL or ACI. Therefore, USC has not sufficiently stated a UCL fraudulent prong claim against FCL or ACI.

---

[6] USC contends that it is unsupported that the Hospitals "knew" of the limited benefits plan. *See* ACI Opposition at 14. However, Patient presented their insurance card to the Verdugo Hills Hospital, which "claim[ed] the plan offers 'Limited medical benefits underwritten by: First Continental Life and Accident Insurance Company,'" *see* 1AC ¶¶ 16-17. Thus, USC knew that there were some limitations on the coverage.

Accordingly, because USC has not properly pled a cause of action under any of the UCL's three prongs against FCL or ACI, FCL and ACI's Motions to Dismiss the UCL claim are GRANTED.

### H.  USC shall be granted leave to amend.

FCL and ACI have not established that it would be futile for USC to amend its claims. As noted, USC simply failed to respond to many of the arguments and failed to point this Court to specific allegations in its 1AC. It appears that if given the opportunity, USC could add more specific allegations, and, should a further motion to dismiss be brought, point to specific allegations in response. It is not this Court's responsibility to scour the 1AC for such allegations.

### REQUESTS FOR JUDICIAL NOTICE (DKT. NOS. 23, 33-2)

I.    **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

/ / /

/ / /

/ / /

II.     **Discussion**

    **A. Defendants Coventry Health's and First Health's Request for Judicial Notice is Granted in Part.**

In support of its Motion, Defendants Coventry Health and First Health request the Court judicially notice three (3) documents. Dkt. Nos. 23, 33-2. USC opposes Defendants' request for judicial notice for two of the documents. RJN Opposition at 2-3, Dkt. No. 30. The documents are listed below (with descriptions based on Defendants' descriptions of the documents):

1. Order Adopting Stipulation and Waiver for Monetary Penalty, Costs and Conditions, dated August 31, 2022, in the Matter of: First Continental Life & Accident Insurance Company and Administrative Concepts, Inc., File No. LA202100084. See Declaration of Shannon L. Ernster ("Ernster Decl."), ¶ 4, Ex. B.

2. List of All Licensed Plans, as of July 7, 2025, obtained from the Department of Managed Health Care's web site: https://wpso.dmhc.ca.gov/hpsearch/viewLicensedHealthPlan.aspx. See Ernster Declaration, ¶ 5, Ex. C.

3. List of All Licensed Plans, as of May 4, 2023, obtained on May 4, 2023 from the Department of Managed Health Care's web site: https://wpso.dmhc.ca.gov/hpsearch/viewLicensedHealthPlan.aspx. See Declaration of Shannon L. Ernster in Support of Second Request for Judicial Notice, ¶ 3, Ex. A

Coventry Health and First Health contend that their documents for request are matters of public record and can be readily confirmed by sources that cannot be questioned. *See* Dkt. Nos. 23, 33-2 at 2.

USC first contends that the facts in the requested "Order Adopting Stipulation and Waiver for Monetary Penalty" at Exhibit B are in dispute and are also not relevant, and Defendants have not shown that they are "beyond reasonable dispute" or how they are relevant. *See* RJN Opposition at 30 at 3. Coventry Health and First Health argue that these are matters of public record and USC cites to

the same document in its Opposition, so there is no dispute as to its authenticity. *See* RJN Reply, Dkt. No. 33-1. Coventry Health and First Health also contend that the Order Adopting Stipulation is relevant, because USC relies on the cease-and-desist order to support its claim against Defendants Coventry Health and First Health, and the Order Adopting Stipulation resolved matters raised in the cease-and-desist order. *See id.*

Here, the Court finds that the Order Adopting Stipulation is a matter of public record and relevant, and thus the Court will take judicial notice of it. USC's 1AC frequently references the cease-and-desist order, so the Order Adopting Stipulation is related and relevant to its claims. *See* 1AC ¶¶ 22-31, 81, 95. Furthermore, the Order Adopting Stipulation is a public record before the California Department of Insurance, where its existence and contents (i.e., the fact that this document exists and that it contains the words it contains) cannot reasonably be disputed. Therefore, it is properly subject to judicial notice. *See* Fed. R. Evid. 201(b)(2). The Court will take judicial notice of this document, but the Court will not take notice of any disputed facts in this document.

Next, USC contends that the "List of All Licensed Plans, as of July 7, 2025" is not relevant, because the dates of service at issue is from February to March 2023. *See* Dkt. No. 30 at 3. Coventry Health and First Health do not contest this allegation. *See* RJN Reply at 4. The Court finds that the "List of All Licensed Plans, as of July 7, 2025" is not relevant and will not take judicial notice. However, Defendants Coventry Health and First Health also ask the Court for request of the "List of All Licensed Plans, as of May 4, 2023," which includes February to March 2023. *See* Dkt. No. 33-1 at 4-5; Dkt. No. 33-2 at 2. The Court finds that the 2023 list is relevant as to whether Defendants Coventry Health and First Health are health care service plans and cannot be reasonably challenged as to its authenticity. Thus, the Court will take judicial notice of the "List of All Licensed Plans, as of May 4, 2023." The truth of the information contained therein, however, remains in dispute.

Accordingly, Defendants Coventry Health's and First Health's request for judicial notice is GRANTED IN PART.

### DEFENDANTS COVENTRY HEALTH's AND FIRST HEALTH's MOTION TO DISMISS (DKT. NO. 22-1)

I.      **Applicable Law**

Defendants Coventry Health and First Health also move to dismiss the 1AC under Federal Rule of Civil Procedure 12(b)(6), for which the standard the Court has laid out previously.

## II.   Discussion

Defendants Coventry Health and First Health move to dismiss USC's claims (1) negligent misrepresentation; (2) deceit; (3) breach of implied-in-fact contract; (4) quantum meruit; (5) promissory estoppel; (6) unfair business practices; (7) breach of written contract; and (8) breach of written contract. *See generally* Coventry Motion. For the reasons stated below, the Court GRANTS IN PART the Motion.

### A. USC has not stated claims for Negligent Misrepresentation and Deceit against Coventry Health or First Health (Claims One and Two).

The legal standards for negligent misrepresentation and deceit are discussed above. *See B.L.M.*, 64 Cal. Rptr. 2d at 342; *Foster*, 276 Cal. Rptr. 3d at 197; *West*, 154 Cal. Rptr. 3d at 295; *Blickman Turkus, LP*, 76 Cal. Rptr. 3d at 332; *Beckwith*, 141 Cal. Rptr. 3d at 159.

Coventry Health and First Health contend that there are no allegations of any communication between Coventry Health or First Health and USC to show how Coventry Health or First Health were involved in the claims. *See* Coventry Motion at 12-13. They claim that USC could not have relied on any such agreement to pay by Coventry Health or First Health. *See id.* at 13. USC contends that the "well-pleaded agency allegations" with ACI "acting on behalf of Coventry [Health] and [First Health]" implicates Coventry Health and First Health and makes them liable for any ACI communication and agreement to pay, whether or not the insurance was funded or administered by Coventry Health or First Health. *See* Coventry Opposition at 9-10.

Here, the Court finds that USC has not sufficiently alleged any agency relationship to make Coventry Health or First Health liable for negligent misrepresentation or deceit. To sufficiently plead an agency relationship, a plaintiff must show that "the degree of control exerted over the subsidiary by the parent is enough to reasonably deem the subsidiary an agent of the parent under traditional agency principles." *Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 838 (Cal. Ct. App. 2000). Control is the key characteristic of the agent/principal relationship. *Id.* USC has only alleged that "Defendants have entered into an *administrative service agreement or other contracts* with

23

ACI . . . to act as agents for Defendants, and have provided ACI . . . actual or ostensible authority to act on Defendants' behalf," *see id.* ¶ 14 (emphasis added), but this does not establish that ACI has the control to act on behalf of Coventry Health or First Health. And USC has not provided evidence of this administrative service agreement or other contract, and as explained above, USC has not alleged sufficient facts to show Robert or any other ACI employee had the authority to bind ACI on behalf of other Defendants. Therefore, USC has not pleaded a sufficient agency relationship to bind Coventry Health or First Health. And there was no allegation of any communication between Coventry Health or First Health and USC, only one between ACI and USC. *See* 1AC ¶ 18; *see also id.* ¶ 15 (noting that USC "dealt directly with FCL [and/or] ACI . . . in obtaining agreements to pay for services"). Thus, because there was no communication of any fact by Coventry Health and First Health, USC has not stated a claim against Coventry Health and First Health for negligent misrepresentation or deceit.

Because USC contends that its "theory of liability [against Coventry Health and First Health on the negligent misrepresentation and deceit claims] rests on a viable agency relationship," *see* Coventry Opposition at 10, the Court need not address Defendants' other arguments that the negligent misrepresentation and deceit claims are not pleaded with the requisite specificity, and do not show any requisite intent or duty to disclose for a deceit claim. *See* Coventry Motion at 13-14.[7]

Accordingly, Coventry Health's and First Health's Motion to Dismiss the negligent misrepresentation and deceit claims is GRANTED.

/ / /

/ / /

/ / /

---

[7] If the Court were to address Coventry Health's and First Health's arguments on specificity, the Court would reach the same conclusion as discussed in FCL's and ACI's Motions because the negligent misrepresentation and deceit claims refer to "Defendants" broadly. *See* 1AC ¶¶ 73-84, 89-103; *see also id.* ¶ 79 (noting that "payors" generally refers to "FCL, ACI, and its other co-conspirators," not to Defendants Coventry or First Health specifically). And USC has not alleged any facts in the 1AC to show that Coventry Health or First Health had a "duty to inform the Hospitals." *See* Coventry Opposition at 10-11.

**B. USC has adequately stated a claim for Breach of the Keck Agreement against Coventry Health and First Health (Claim Seven).**

The legal standards for breach of contract are discussed above. *See Oasis W. Realty, LLC*, 250 P.3d at 1121; *United States ex rel. Oliver*, 195 F.3d at 462.[8] USC alleges violations of Section 3.3, 3.4, and 3.5 of the Keck Hospital Contractual Agreement. *See* 1AC ¶¶ 156-63.

      i.  Coventry Health and First Health did not breach Section 3.3 for failing to ensure FCL complies with California insurance law.

First, Coventry Health and First Health contend that it did not breach Section 3.3 of the Keck Agreement. *See* Coventry Motion at 25-26. Section 3.3 of the Keck Agreement states that "Coventry shall, however, require each Payors to comply with applicable state and federal laws and regulations and the relevant terms and conditions of this Agreement," and USC alleges that Coventry Health and First Health breached this provision "by failing to require FCL to comply with California Insurance law." *See* 1AC ¶¶ 157-58.

Coventry Health and First Health contend that Section 3.3 does not require "third party payors to comply with all applicable laws," but only to "comply with all payment terms and obligations under this agreement." *See* Coventry Motion at 25-26. Neither Coventry Health and First Health nor USC attached the full contract in question, thus the Court cannot do an adequate interpretation of the Keck Agreement. However, under the Section 3.3 term alleged in the 1AC, *see* 1AC ¶ 157, the Court does find that it does require Coventry Health and First Health to require its third-party payors to comply with California law, because an "applicable state" law would be a California insurance law, given that the contract is governed by California law, *see* 1AC ¶ 159, and FCL was acting as an insurance company in California, *see id.* ¶¶ 22-26. However, the Court finds that USC has not sufficiently alleged facts to show that there was any breach of Section 3.3 by Coventry Health and First Health. *See* Coventry Motion at 26. USC contends that "Coventry [Health] and [First Health] took no action to ensure that FCL fulfilled its payment obligations,

---

[8] Coventry Health and First Health contend that the contracts in question, the Keck Agreement and the Verdugo Hills Hospital agreement require "the parties to engage in dispute resolution," *see* Coventry Motion at 25, and thus seem to be arguing that this claim is not ripe. USC does not address this argument or attaches the contracts in question for reference. The Court finds that it cannot adequately address this allegation without examining the written contracts.

thereby breaching Section 3.3." *See* Coventry Opposition at 21. But USC does not point to any allegations in its 1AC to support this contention. *See id.* Thus, USC has not stated a claim that Coventry Health and First Health breached Section 3.3 of the Keck Agreement for failing to ensure FCL complies with California insurance law.

> ii. USC has sufficiently pleaded that Coventry Health and First Health are liable for breach of contract for FCL's failure to pay USC.

USC's allegation in Paragraph 161 is that Coventry Health and First Health are liable for breach of a written contract for "fail[ing] to pay Keck for the services rendered to the Patient." *See* 1AC ¶ 161. Coventry Health and First Health contend that because Section 3.3 of the Keck Agreement states that "[w]hen a Coventry Company is not the Payor, the Payor, not Coventry or a Coventry Company, shall have the obligation and liability to Hospital with respect to any claim or fee for health care services relating to or arising under the Agreement," *id.* ¶ 157, Coventry Health and First Health are not obligated to pay since they are not payors, *see id.* ¶ 21. However, Coventry Health and First Health are still liable to ensure the payors "comply with … the relevant terms and conditions of [the Keck] Agreement." *See id.* ¶ 157; Coventry Motion at 29. Thus, when viewing the facts as true, USC has sufficiently pled that Coventry Health and First Health breached of the Keck Agreement for FCL's failure to pay.

> iii. USC has failed to plead that Coventry Health breached Section 3.4 of the Keck Agreement, but it has properly pleaded that First Health did.

Next, Coventry Health and First Health contend that USC fails to allege that they breached Section 3.4 of the Keck Agreement. *See* Coventry Motion at 26. Section 3.4 of the Keck Agreement states that "Coventry and Coventry Companies agree to comply with all applicable . . . state . . . laws and the directives of applicable agencies, and regulations of CMS, any other oversight agencies and in the state(s) in which Coventry Company operates." *See* 1AC ¶ 159. USC alleges that Coventry Health and First Health breached this provision "by aiding and abetting [FCL] to transact insurance business in California in violation of California Insurance Code section 703," because Defendants allowed "FCL to continue to identify First Health Network on insurance identification cards in February 2023," and "improperly and illegally granted [FCL] access to rates in the Keck Agreement,

and "by failing to comply with CDI's Cease-and-Desist Order." *See id.* ¶¶ 156, 159. The Court finds USC has properly pleaded a breach of Section 3.4 as to First Health, but not as to Coventry Health.

Coventry Health and First Health contend that there are no allegations of a violation of law or the cease-and-desist order at the time Patient's insurance in question was used in February 2023. *See* Coventry Motion at 10-11, 26-27. USC pleads that as of August 2022, FCL and all parties reached a settlement in regards to the cease-and-desist order referenced in the 1AC. *See* 1AC ¶¶ 22-26; *see also* Order Adopting Stipulation and Waiver for Monetary Penalty, Costs and Conditions, Ex. B., Dkt. No. 22-2. In the settlement, it stated that "any certificate holders choosing not to rescind may, at their option, keep their coverage until the next anniversary fate of their certificate, at which time said certificate shall be nonrenewed by [FCL]." *See* Order Adopting Stipulation and Waiver for Monetary Penalty, Costs and Conditions, Ex. B. at 2, Dkt. No. 22-2. Coventry Health and First Health contend that because holders of the "unlawful" FCL insurance could choose to continue their coverage until the next anniversary date, the continuing and issuing of Patient's insurance was lawful since Patient had lawful coverage until February 14, 2023, her insurance anniversary date. *See* Coventry Motion at 11, 26. However, there are no facts in the 1AC to allege, that Patient in question chose not to rescind his FCL insurance, which would have obligated FCL to continue coverage until February 14, 2023. Therefore, Coventry Health's and First Health's argument regarding the settlement is inapposite and it thus cannot be said that "FCL's continued coverage under the Patient's certificate was legal." *See id.* at 26. Put another way, reading all reasonable inferences in favor of USC, the continued coverage was not legal.

Coventry Health and First Health then argue that USC does not "allege any facts indicating that First Health failed to comply with the Order, and Coventry [Health] was not even named as a party involved in the events giving rise thereto." *See* Coventry Motion at 27. But USC contends that it "was FCL's continued reliance of the [First Health] Network branding to mislead providers into providing uncompensated services that triggered a violation of Section 703 [and continued violation of the cease-and-desist order], not the continued existence of the coverage." *See* Coventry Opposition at 21-22. Viewing the allegations as true, USC alleges facts to support this contention as to First Health. *See* 1AC ¶¶ 68, 81, 96. However, Coventry Health was not named in the cease-and-

desist order, which lays out the grounds for the violation of California Insurance Code Section 703 and all other unlawful allegations, *see* 1AC ¶¶ 67, 159, so USC has failed to allege that Coventry Health violated any law or aided and abetted any unlawful activity in violation of the Keck Agreement's Section 3.4. Therefore, the Court finds that the allegations sufficient as to First Health, but not to Coventry Health.

The Court finds that USC has alleged facts to show how a violation of Section 703 resulted in damages. *See* Coventry Motion at 26; Coventry Opposition at 22. Coventry Health and First Health rely on their "Order Adopting Stipulation" argument above to show why the damages are attenuated, *see* Coventry Reply at 12, but the Settlement argument does not apply here. USC's damages stem from USC providing services that were not covered, because Patient's plan was terminated on February 14, 2023, *see* 1AC ¶¶ 56, 59, which resulted in damages "by denying [USC] full reimbursement for the claims at issue at the rates under the Keck Agreement," *see id.* ¶ 163. And part of the reason the plan was not covered is because of First Health's continued work in misleading USC to think there was proper coverage. *See* 1AC ¶¶ 68, 81, 96. Thus, damages stem from a Section 703 violation.

### iv.  Coventry Health and First Health did not breach Section 3.5.

USC alleges that "Defendants [Coventry Health and First Health] also breached Section 3.5 of the Keck Agreement by failing to require FCL maintain the necessary licenses and certifications to transact insurance business in California. [And] by failing to notify Hospitals of CDI's Cease-and-Desist Order." *See* 1AC ¶ 160. Coventry Health and First Health contend that USC "has not alleged facts to indicate that this requirement applies to Coventry [Health]'s relationship with FCL." *See* Coventry Motion at 27-28. The Court finds that USC has not alleged sufficient facts to support its contention that Coventry and First Health violated Section 3.5, because USC has not provided any contractual terms of Section 3.5 in the 1AC. Therefore, the Court finds that USC cannot state a violation of Section 3.5 against Coventry Health or First Health.

Accordingly, for the foregoing reasons, Coventry Health's and First Health's Motion to Dismiss for the breach of a written contract is DENIED.

**C. USC has not sufficiently alleged a Breach of the Verdugo Agreement against Coventry Health or First Health (Claim Eight).**

Coventry Health and First Health argue that USC has failed to adequately plead a breach of the Verdugo Agreement. In its opposition, USC does not point to any specific allegations supporting this claim or respond to the arguments made in the Motion.

Accordingly, Coventry Health's and First Health's Motion to Dismiss the breach of written contract claim (Claim Eight) is GRANTED.

**D. USC has properly alleged a claim for Breach of Implied-In-Fact Contract against Coventry Health or First Health improper (Claim Three).**

Just as USC has properly alleged breach of contract claims against Coventry Health and First Health, the Court finds it has properly alleged breach of an implied-in-fact contract in the alternative. A claim for breach of implied-in-fact contract has the same elements as a claim for breach of contract, "except that the promise is not expressed in words but is implied from the promisor's conduct." *Aton Ctr., Inc.*, 311 Cal. Rptr. 3d at 580.

The allegations of conduct that give rise to this claim are "the Hospitals notif[ying] the Defendants of the Patient's inpatient admission and verif[ying] the Patient's eligibility, coverage, and benefits with the Defendants," and "Defendants provid[ing] to the Hospitals written and oral verification of the Patient's eligibility, cover, and benefits . . . [and] repeatedly inform[ing] Hospitals that no authorization was required." *See* 1AC ¶¶ 106-07. And it also included "Coventry Company permit[ting] FCL to continue to identify Coventry Company on insurance identification cards in February 2023," and "improperly and illegally grant[ing] FCL access to rates in the Hospitals' Agreements," which gave rise "to an implied-in-fact contract between the Hospitals and Defendants to pay for the care." *Id.* ¶¶ 112-14. USC thus sufficiently alleges that Coventry Health and First Health breached its implied-in-fact contract by failing to pay the Hospital or ensuring FCL pay. *Id.* ¶¶ 117-19; *see also* Coventry Opposition at 12-13. The Defendants' remaining arguments are unavailing because USC has sufficiently alleged the conduct necessary for a breach of an implied-in-fact contract.

Accordingly, Coventry Health's and First Health's Motion to Dismiss the breach of implied-in-fact contract claim (Claim Three) is DENIED.

**E. USC has not sufficiently alleged a Quantum Meruit claim against Coventry Health and First Health (Claim Four).**

The legal standard for quantum meruit is discussed above. *See Day*, 119 Cal. Rptr. 2d at 609. Coventry Health and First Health contend that there was no express or implied request for services and no benefit conferred on Coventry Health or First Health. *See* Coventry Motion at 16-18. Here, while it may be true that USC was required to provide emergency care to Patient under 42 U.S.C. § 1395dd, regardless of any express or implied request, *see* Coventry Opposition at 13-14, USC's description on how a health insurance plan operates, *see id.* at 14, did not sufficiently explain what and how Coventry Health or First Health received any benefit from the services provided by the Hospitals. Patient received a benefit from the hospital's services, and the hospital received a benefit by being reimbursed from the health insurance company. But neither show any benefit conferred on Coventry Health or First Health. So, USC's allegation that "[t]he Hospitals' provision of said medical services to the Patient was intended to and, in fact, benefited Defendants," *see* 1AC ¶ 124, is an insufficient conclusory allegation. Therefore, USC has not stated a quantum meruit claim against Defendants Coventry and First Health.

Accordingly, Coventry Health's and First Health's Motion to Dismiss the quantum meruit claim is GRANTED.

**F. USC's promissory estoppel claim against Coventry Health and First Health Survives (Claim Five).**

The legal standard for Promissory Estoppel is discussed above. *See Flintco Pac., Inc.*, 205 Cal. Rptr. 3d at 26. Here, the Court finds that USC has sufficiently stated a promissory estoppel claim against Coventry Health and First Health. USC alleges that "Defendants informed Hospitals that the Patient had active coverage and no preauthorization was required for services the Hospitals would provide the Patient," and "Defendants knew and/or should have known that Hospitals would be reasonably induced to rely on their representations by providing hospital services to the Patient." 1AC ¶¶ 129-30. And then USC alleges that the Hospitals reasonably relied on the communications and provided medical services but Defendants did not pay for it. *Id.* ¶¶ 131-32. This sufficiently alleges a promissory estoppel claim.

Defendants contend that the factual allegations do not show how Coventry Health or First Health made the promise alleged, *see* Coventry Motion at 18, but the allegations state that "Keck relied upon such verifications and the plan's participation in the First Health/Coventry Company to 'financially clear' the Patient prior to accepting the Patient for lateral transfer," and Keck "expected reimbursement from the plan at the Coventry Company rates under the Keck and Verdugo Agreement," 2AC ¶¶ 48, 50. To that end, the Court finds these allegations "sufficiently define" the scope of duties and limits of performance on Coventry Health and First Health, and therefore plausibly constitute an enforceable promise as to Coventry Health and First Health to state a promissory estoppel claim. *Aceves*, 120 Cal. Rptr. 3d at 514.

Accordingly,  Coventry Health's and First Health's Motion to Dismiss the promissory estoppel claim is DENIED.

### G.  USC has sufficiently alleged a UCL claim against First Health but not Coventry Health (Claim Six).

The legal standard for a UCL claim is provided above. *See Lozano*, 504 F.3d at 731; *Prudential Home Mortg. Co. v. Superior Ct.*, 78 Cal. Rptr. 2d 566 (Cal. Ct. App. 1998); *Knox v. Phoenix Leasing Inc.*, 35 Cal. Rptr. 2d 141, 149 (Cal. Ct. App. 1994); *Birdsong*, 590 F.3d at 959; *Kwikset Corp.*, 246 P.3d at 885.

USC alleges a UCL claim against Coventry Health and First Health for (1) Unlawful, (2) Unfair, and (3) Fraudulent activity.

    i. <u>USC can only allege a UCL unlawful prong claim against First Health, not Coventry Health.</u>

The legal standard for a UCL unlawful prong claim is discussed above. *See Farmers Ins. Exch.*, 826 P.2d at 734; *Foster*, 276 Cal. Rptr. 3d at 197; *Blickman Turkus, LP*, 76 Cal. Rptr. 3d 3at 340.

First, Coventry Health and First Health contend that their conduct did not violate 28 Cal. Code Reg. § 1300.71 and Cal. Health & Safety Code § 1371.4(b), *see* 1AC ¶ 141(a), (b), (e), because neither Coventry Health nor First Health is a health care services plan. *See* Coventry Motion at 19-20. USC contends that Coventry Health and First Health can still be liable under the Knox-Keene

Act and Sections 1300.71 and 1371.4(b) for aiding and abetting violations under the Act. *See* Coventry Opposition at 16.

The Knox-Keene Act does only apply to health care plans and its plan's capitated providers, *see* Cal. Code Regs. tit. 28, § 1300.71(a)(12), (e), and Cal. Health & Safety Code § 1371.4(b) does also only apply to health care services plans or its contracting medical providers, *see* § 1371.4(b). Therefore, because Coventry Health or First Health are not a health care service provider, capitated provider, or medical provider, *see* Ernster Decl. ¶ 3, Ex. A, Dkt. No. 33-3, they are not liable under the Knox-Keene Act. However, Coventry Health and First Health could be liable for aiding and abetting violations of Sections 1300.71 and 1371.4 if USC can show facts that Coventry or First Health knew other Defendant's conduct constituted a breach of the law and gave substantial assistance or encouragement. *See People ex rel. Harris v. Sarpas*, 172 Cal. Rptr. 3d 25, 48 (Cal. Ct. App. 2014) (quoting *Schulz v. Neovi Data Corp.*, 60 Cal. Rptr. 3d 810, 816 (Cal. Ct. App. 2007).

Here, USC cannot allege facts to show that Coventry Health or First Health "knowingly facilitated" FCL's failure to reimburse or pay the Sections 1300.71 and 1371.4 claims. S*ee* Coventry Opposition at 16; *see also* 1AC ¶ 141(a), (b), (e). As to Coventry Health, as discussed above, Coventry Health was not named in the cease-and-desist order, and thus cannot be alleged to have aided and abetted any unlawful activity. And as to First Health, while USC has alleged facts that First Health knowingly violated the cease-and-desist order in violation of California Insurance Code Section 703, *see* 1AC ¶¶ 68, 81, 96, USC has not alleged facts to show how the violation of Section 703 led to First Health knowingly aiding and abetting FCL in violating Sections 1300.71 and 1371.4. There are too many hoops to jump through to get to this conclusion. Therefore, Coventry Health and First Health cannot be liable for other Defendants' failure to pay and reimburse claims under Sections 1300.71 and 1371.4.

Second, the allegations of the unlawful activity in the 1AC applying to Coventry Health and First Health (USC does not differentiate) in ¶ 141(c), (d), (f), (j), (k), (l) are claims rooted in negligent misrepresentation, fraud, or deceit that do not meet the heightened pleading standard, as

discussed above under Rule 9, if not under California law. *See Foster*, 276 Cal. Rptr. at 197; *Blickman Turkus*, 76 Cal. Rptr. at 340; *Vess*, 317 F.3d at 1105.[9]

Third, Coventry Health and First Health contend that there was no violations of California Insurance Code Sections 790.02 and 790.03. *See* Coventry Motion at 20-21; *see also* 1AC ¶ 141(n). Section 790.02 states: "No person shall engage in this State in any trade practice which is defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Cal. Ins. Code § 790.02. And the unfair or deceptive act is defined in Section 790.03(b) as: "Making or disseminating or causing to be made or disseminated before the public in this state, . . . any statement containing any assertion, representation, or statement with respect to the business of insurance . . . , which is untrue, deceptive, or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue, deceptive, or misleading." Cal. Ins. Code § 790.03(b). The only violation of Sections 790.02 and 790.03(b) related to Coventry Health and First Health is "improperly and illegally granting FCL access to rates in the Hospitals' Agreements in furtherance of FCL's continued administration of unlawful health benefits to the Patient." *See* 1AC ¶ 141(n).

Coventry Health and First Health contend that the "it is unclear how allowing FCL to access the rates in the Hospitals' Agreements is a violation of Section 790.03(b). The written agreements acknowledge that a network lease through First Health was a product in which Hospitals agreed to participate." *See* Coventry Motion at 21. USC contends that the continuing permission of allowing FCL to access the rates is in violation of Section 790.03(b), because it causes FCL to misrepresent to the public its insurance capabilities. *See* Coventry Opposition at 17. USC can allege that First Health would know that allowing FCL to access its rates would be deceptive or misleading under Section 790.03(b) because First Health knowing violated the cease-and-desist order, *see* 1AC ¶¶ 68, 81, 96, however, USC cannot show that Coventry Health would know that allowing FCL access to its rate

---

[9] ¶ 141(l) in the 1AC is the only UCL violation that relies on the cease-and-desist order. *See* Coventry Motion at 21-22. But because it only relies on the cease-and-desist order as a violation of a claim rooted in misrepresentation and deceit, USC cannot allege any violation as to Coventry Health and First Health since it is not pleaded with the specificity required.

would be deceptive since, as explained above, Coventry Health was never mentioned in the cease-and-desist Order. Therefore, only First Health can be liable for a UCL unlawful prong violation of Section 790.03(b).

Fourth, USC alleges that Coventry Health and First Health engaged in unlawful activities "in aiding and abetting FCL's illegal business of insurance in California and continued administration of unlawful health benefits to the Patient. Specifically, "FCL and/or ACI verified to the Hospitals on multiple occasions that the Patient had active health insurance coverage through FCL. Payors continued to identify First Health Network on the Patient's insurance identification cards in February 2023." *See* 1AC ¶ 141(m). Coventry Health and First Health argue that there are no facts to allege that Coventry Health or First Health aided and abetted FCL's illegal business of insurance. *See* Coventry Motion at 21.

Here, as discussed above, because Coventry Health was not named in the cease-and-desist order that stemmed the entire claim and unlawful activity, Coventry Health does not have the intent needed to allege it aided and abetted FCL. Also, there is no sufficient agency relationship to tie Coventry Health to FCL's and ACI's actions. However, as explained above, USC has alleged facts to show that First Health aided and abetted FCL's illegal insurance business in California. Therefore, USC can only state an unlawful prong violation for ¶ 141(m) against First Health, and not Coventry Health.[10]

Accordingly, because USC has properly alleged that First Health has aided and abetted Defendants but has not properly alleged that Coventry Health has, the Court must GRANT this Motion on this ground only as to Defendant Coventry Health. The Motion is DENIED as to Defendant First Health.

---

[10] The insurance card argument that the "fact that First Health's name is on the insurance card does not constitute a representation by First Health [or Coventry Health] as to the insurance issued by FCL," *see* Coventry Motion at 21, does not negate the fact that First Health aided and abetted, and thus the Court need not address it. USC's rebuttal of this argument is in relationship to a Section 790.03(b) violation even though this allegation is in ¶ 141(m) and not ¶ 141(n), which actually addresses Section 790.03(b). *See* Coventry Opposition at 16-17.

ii. <u>USC has failed to allege a UCL unfairness prong claim against Coventry Health or First Health.</u>

The legal standard for a UCL unfairness prong claim is discussed above. *See CVS Pharmacy, Inc.*, 982 F.3d at 1214-15. Coventry Health and First Health contend that there was no unfairness claim, because there was no communication between USC and Coventry Health or First Health, and there are no facts to show Coventry Health or First Health is financially liable. *See* Coventry Motion at 24. USC contends that its unfairness prong claim is "tethered to public policies to promote a transparent medical reimbursement system," and the "gravity of harm to the Hospitals and the healthcare system in California far outweighs any justification for Coventry or [First Health] to continue permitting FCL access to the Network." *See* Coventry Opposition at 18.

Here, as explained above with FCL's and ACI's claim, the Court finds that USC has not adequately pleaded any public policy allegation for a UCL claim under the unfairness prong. Also, when viewing the allegations as true, USC has not alleged factual support for how the harm to the Hospitals outweighs any justification by Coventry Health and First Health to continue its conduct. USC only alleges that "[a]s a direct and proximate result of Defendants' wrongful acts, the Hospitals have suffered and will continue to suffer substantial pecuniary losses and irreparable injury-in-fact. Plaintiff is informed and believes that Defendants will continue their ongoing unfair business practices toward Plaintiffs if not enjoined from doing so." *See* 1AC ¶ 145-46. Accordingly, USC has failed to state a UCL claim under the unfairness prong against Coventry Health or First Health.

iii. <u>USC has failed to allege a UCL fraudulent prong claim against Coventry Health or First Health.</u>

The legal standard for a UCL fraudulent prong claim is discussed above. *See Rubio*, 613 F.3d at 1204. Coventry Health and First Health contend that USC "has failed to allege facts showing that members of the public are likely to be deceived by any conduct or statements by Coventry [Health] or First Health." *See* Coventry Motion at 22-23. USC contends that it has alleged the public, including medical providers, "*were* likely to be deceived by the conduct at issue." *See* Coventry Opposition at 19 (emphasis added). And that Defendants "continued grant of access to the Network … [is] enabling FCL to continue misleading medical providers into providing services with the false expectation of reimbursement at the network rates." *See id.*

Here, the Court finds that USC does not allege any facts as to how Coventry Health's or First Health's actions are likely to reasonably deceive or have deceived the public. USC only alleges that "Defendants intended to deceive the Hospitals by concealing these facts," not deceive the public. *See* 1AC ¶ 100; *see also* Coventry Opposition at 19 (citing no facts in the 1AC to support its claim). And that "[a]s a direct and proximate result of the Plan's wrongful, misleading, and illegal acts, *Hospitals* have suffered substantial pecuniary losses and irreparable injury-in-fact." *See* 1AC ¶ 147 (emphasis added). And as discussed above, USC could not adequately state claims for negligent misrepresentation and deceit against Coventry Health or First Health. Therefore, USC has not sufficiently stated a UCL fraudulent prong claim.

Accordingly, because USC has only pleaded a proper cause of action under the unlawful claim against First Health, Coventry Health's and First Health's Motion to Dismiss the UCL claim is DENIED IN PART as to First Health.

### H.  USC shall be granted leave to amend.

Coventry Health and First Health have not established that it would be futile for USC to amend its claims. Thus, it appears that if given the opportunity, USC could add more specific allegations, and, should a further motion to dismiss be brought, point to specific allegations in response. Accordingly, the Court shall grant USC leave to amend as to all dismissed claims.

***

### III.    Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendant FCL's Motion to Dismiss, **Dkt. No. 20**, is GRANTED IN PART:

    a.   The Motion is DENIED as to Claim Five; and

    b.   All other claims are GRANTED WITH LEAVE TO AMEND;

2. Defendant ACI's Motion to Dismiss, **Dkt. No. 27**, is GRANTED IN PART:

    a.    The Motion is DENIED as to Claim Five; and

    b.   All other claims are GRANTED WITH LEAVE TO AMEND;

3. The Request for Judicial Notice filed by Defendants Coventry Health Care National Network Inc and First Health Group Corp., **Dkt. Nos. 23, 33-2**, is GRANTED IN PART;

4. Defendants Coventry Health's and First Health's Motion to Dismiss, **Dkt. No. 22**, is GRANTED IN PART:

    a. Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to the Negligent Misrepresentation claim;

    b. Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to the Deceit claim;

    c. Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to the Quantum Meruit claim;

    d. Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to the Breach of Written Contract claim (Claim Eight);

    e. Motion to Dismiss is DENIED as to the Breach of Implied-in-Fact Contract claim;

    f. Motion to Dismiss is DENIED as to the Promissory Estoppel claim;

    g. Motion to Dismiss is GRANTED WITH LEAVE TO AMEND as to the UCL claim as to Coventry Health but DENIED as to the UCL claim as to First Health; and

    h. Motion to Dismiss is DENIED as to the Breach of Written Contract claim (Claim Seven).

5. Should USC wish to amend any of the dismissed claims, it must do so within thirty (30) days of the date of this Order. Should USC fail to file a further amended complaint, the only claims that shall remain are those not dismissed by this Order, and the operative filing date for the Defendants' responses shall be the thirty-day date upon which the further amended complaint should have been filed.

//

//

//

//

6.  The Court will issue its Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: March 25, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge